UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

SHIRLEY WARD,

     Plaintiff,

v.                                 Case No: 6:23-cv-1387-JSS-NWH

DEPARTMENT OF THE NAVY,

     Defendant.

_____/

## <u>ORDER</u>

     Defendant, the Department of the Navy, moves for summary judgment. (Dkts. 28, 32.) Plaintiff, Shirley Ward, opposes the motion. (Dkt. 29.) Upon consideration, for the reasons outlined below, Defendant's motion is granted.

## BACKGROUND

     Plaintiff joined the Army in 1980, eventually attaining the rank of Sergeant Major. (Dkt. 28-3 at 4.) She is an African American woman who, at all times relevant to this matter, was over the age of forty. (Dkt. 28-1 at 14.) In 2009, she was hired into the Don Acquisition Intern Program. (*See* Dkt. 28-2 at 2; Dkt. 29-6 at 1.) Plaintiff's SF-50, a notification of personnel action form, indicated that the internship was meant to last two years and that, "[u]pon satisfactory completion of the internship, [Plaintiff] may be noncompetitively converted to a career appointment." (Dkt. 28-2 at 2.) According to that form, Plaintiff's employment would be terminated if she "fail[ed] to

complete the internship." (*Id.*)  According to Plaintiff, she was "promised that when [she] completed the objective learning modules and the related testing, [she] would be promoted to GS-12," the twelfth paygrade in the General Schedule (GS) payscale. (Dkt. 29-6 at 1.)

In 2011, a little over two years after Plaintiff was hired into the internship program, Plaintiff's rating official, Roxy Campos, indicated that Plaintiff's performance was "marginally acceptable." (Dkt. 28-3 at 38.)  She noted that, "[w]hile [Plaintiff] completes all work assignments given to her, she requires significant guidance from her [c]ontracting [o]fficer and considerable rework is necessary." (*Id.*)  After twice assessing Plaintiff, Campos found that Plaintiff "was unable to articulate fundamental concepts discussed in her . . . courses." (*Id.* at 39.)  She also determined that Plaintiff struggled with her assignments and "required significant guidance from her [c]ontracting [o]fficer," who needed to "direct[] and prompt[] each step of the process." (*Id.*)  Campos wrote that Plaintiff "ha[d] not demonstrated the aptitude or ability to perform independently at the GS-12 . . . level," and accordingly recommended that she "remain at her current grade level until . . . she satisfie[d] all of her [individual development plan (IDP)] requirements." (*Id.*; *accord* Dkt. 28-1 at 18.) On July 18, 2011, Campos indicated that she would "reassess [Plaintiff]'s progress in satisfying . . . her IDP" in the following months. (Dkt. 28-1 at 17–18.)  On July 22, 2011, however, Plaintiff received an email indicating that she "ha[d] met all the requirements of [her] [IDP]." (Dkt. 29-3 at 2.)  Accordingly, on August 14, 2011, Plaintiff was transferred to the payroll for the Naval Air Warfare Center Training

Systems Division (NAWCTSD), though she was not promoted to the GS-12 payrate; instead, she continued to be compensated at the GS-11 rate. (*See* Dkt. 28-2 at 3.)

Plaintiff continued in this role for the next several years. Although she was consistently found to perform acceptable work, (*see* Dkt. 28-3 at 51, 53, 56, 59, 61–62), the issues previously identified with Plaintiff's performance apparently persisted, (*see, e.g.*, *id.* at 52, 54, 57). In her 2012 performance review, for example, Campos wrote that "[f]or all work assignments," Plaintiff still "required a significant degree of assistance from her [c]ontracting [o]fficer to execute her work to completion," and that "[d]espite frequent written and verbal feedback from the [c]ontracting [o]fficer, the rework required was substantial." (*Id.* at 52.) The next year, Campos again found that "the quality and timeliness of [Plaintiff]'s work product[] [was] marginally acceptable and need[ed] improvement." (*Id.* at 54.) Similarly, her review for 2013 to 2014 indicated that, though some progress had been observed, Plaintiff's performance still "need[ed] improvement." (*Id.* at 57.) Moreover, Campos noted that Plaintiff was "limited in workload capacity . . . due to the timeliness with which she operate[d]." (*Id.*) In each of Plaintiff's evaluations in the following years, Plaintiff's supervisors determined that although Plaintiff's work was acceptable, she was still too dependent on her superiors for assistance. (*See, e.g.*, *id.* at 63 (noting that Plaintiff needed to work on "becoming more independent and increasing her capacity for more complex efforts and critical thinking skills" and that "[s]ignificant . . . resources ha[d] been invested to assist and train" Plaintiff with the intent that she "retain[] that information and complete[] [assignments] more independently").)

A subsequent evaluation performed in April 2019 by Kari Gerety, Plaintiff's new rating official, stated that Plaintiff was still struggling to perform absent significant assistance. (*See id.* at 65–66 ("[Plaintiff] sometimes makes an attempt at researching problems[ and] finding the correct source materials . . . but she is still fairly dependent on the [procuring contracting officer (PCO)] to do the critical thinking and make the final determination. Typically she does not provide her PCO with potential solutions; rather, [she] asks what [the PCO] wants her to do. This is another focus area for [Plaintiff] to work on."); *id.* at 68 ("An area for [Plaintiff] to focus on is her ability to work effectively with broad guidelines and complete assignments with minimal direction. [Plaintiff] can do this with [certain assignments], but efforts involving a cost analysis . . . tend to require a significant level of involvement from the PCO or a peer.").) While Gerety marked Plaintiff's performance as "fully successful," she determined that Plaintiff's performance was "not . . . at the full performance level of her position (GS-12)." (*Id.* at 68.) Plaintiff conceded that she needed to improve, writing that she was "attend[ing] weekly mentoring sessions with a very knowledgeable [s]enior PCO who [wa]s assisting with any shortcomings that w[ere] discussed during [her] appraisal." (*Id.* at 66.) Accordingly, Gerety expressed that she "d[id] not agree with [Plaintiff]'s input" that she had successfully completed her IDP, writing instead that Plaintiff still had work to do before she could be compensated at the GS-12 level. (*Id.*)

On April 25, 2019, in response to Gerety's evaluation, Plaintiff made contact with the Equal Employment Opportunity Commission (EEOC). (*See* Dkt. 29-5 at 2.)

She wrote that she had been promised a promotion to a GS-12 position upon completion of her internship but that instead of being promoted she "was required to sit for an interview with . . . Kari Gerety" and was then "issued an unfair and inaccurate performance evaluation." (*Id.*) Plaintiff noted her disagreement with Gerety's finding that she "asked others for assistance too frequently" and was "not able to think independently," and Plaintiff argued that she "was never given on[-]the [-]job training . . . regarding how to perform the position." (*Id.*) She asserted that "[o]thers" who "[we]re younger than [her]" and "not African American . . . ha[d] been treated more favorably than [her]." (*Id.*)

Plaintiff initiated this action on July 24, 2023. (Dkt. 1.) She asserts three counts under Title VII, 42 U.S.C. § 2000e: two counts of race discrimination—based on Defendant's failure to promote her (Count I) and an allegedly discriminatory performance evaluation (Count II)—and one count of age discrimination (Count III). (*Id.* at 3–6.) She seeks compensatory damages and legal fees. (*Id.* at 6.) Discovery closed on February 3, 2025. (Dkt. 19 at 1.)

## APPLICABLE STANDARDS

Summary judgment is appropriate if no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The party moving for summary judgment must "cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" to support its position that it is entitled to summary judgment. Fed. R. Civ.

P. 56(c)(1)(A). "The court need consider only the cited materials" when resolving the motion. Fed. R. Civ. P. 56(c)(3); *see HRCC, Ltd. v. Hard Rock Cafe Int'l (USA), Inc.*, 703 F. App'x 814, 817 (11th Cir. 2017) ("This rule was implemented so that a court may decide a motion for summary judgment without undertaking an independent search of the record." (quotation omitted)).

A factual dispute is "genuine" only if "a reasonable jury could return a verdict for the non[-]moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if the fact could affect the outcome of the lawsuit under the governing law. *Id.* The moving party bears the initial burden of identifying those portions of the record showing a lack of a genuine factual dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). If the movant shows that no evidence supports the non-moving party's case, the burden then shifts to the non-moving party to show that there are, in fact, genuine factual disputes precluding judgment as a matter of law. *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006).

To satisfy its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see Burger King Corp. v. Weaver*, 169 F.3d 1310, 1321 (11th Cir. 1999) ("The mere existence of a scintilla of evidence in support of the [non-moving party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." (quotation omitted)). The non-moving party must go beyond the pleadings and

"identify affirmative evidence" that creates a genuine dispute of material fact. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); *see also HRCC*, 703 F. App'x at 816–17 ("Presenting arguments in opposition to a motion for summary judgment is the responsibility of the non-moving party, not the court." (alteration adopted) (quoting *Blue Cross & Blue Shield of Ala. v. Weitz*, 913 F.2d 1544, 1550 (11th Cir. 1990))).  In determining whether a genuine dispute of material fact exists, the court must view the evidence and draw all factual inferences in the light most favorable to the non-moving party and must resolve any reasonable doubts in that party's favor.  *Skop v. City of Atlanta*, 485 F.3d 1130, 1136 (11th Cir. 2007).  The court will not weigh the evidence or make findings of fact.  *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003).  Summary judgment should be granted only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non[-]moving party."  *Matsushita*, 475 U.S. at 587.

## ANALYSIS

The court begins by discussing the timeliness of Plaintiff's claims and then outlines the framework for evaluating employment discrimination claims brought by federal employees.  The court then considers the adverse employment actions raised by Plaintiff before turning to her race and age discrimination claims.

### A.  Timeliness of Plaintiff's Claims

"Before bringing a Title VII action in court, a federal employee must first seek relief from the agency where the alleged discrimination occurred."  *Ramirez v. Sec'y,*

*U.S. Dep't of Transp.*, 686 F.3d 1239, 1243 (11th Cir. 2012). "This requirement is not a technicality; rather, it is part and parcel of the congressional design to vest in the federal agencies and officials engaged in hiring and promoting personnel primary responsibility for maintaining nondiscrimination in employment." *Id.* (alteration adopted and quotation omitted). Federal employees who seek to bring allegations that they have been "discriminated against on the basis of race . . . [or] age . . . must initiate contact with a[n equal employment c]ounselor within [forty-five] days of the date of the matter alleged to be discriminatory or, in the case of a personnel action, within [forty-five] days of the effective date" of the personnel action. 29 C.F.R. § 1614.105(a)(1). "Generally, when the claimant does not initiate contact within the [forty-five]-day charging period, the claim is barred for failure to exhaust administrative remedies." *Shiver v. Chertoff*, 549 F.3d 1342, 1344 (11th Cir. 2008).

On April 25, 2019, Plaintiff filed a charge with the EEOC complaining of race and age discrimination, claiming that Gerety's April 11, 2019 performance evaluation had adversely affected her ability to be promoted. (Dkt. 28-1 at 4.) Because this was Plaintiff's first and only contact with the EEOC, Defendant argues that Plaintiff's claims are limited to actions that occurred within forty-five days prior to April 25, 2019. (Dkt. 28 at 14.) Plaintiff provides no argument to the contrary. (*See* Dkt. 29.) The court accordingly limits its review to those allegedly adverse actions that occurred

within this window: Gerety's April 2019 performance evaluation of Plaintiff and Defendant's contemporaneous or subsequent failure to promote Plaintiff to GS-12.[1]

## B. Federal-Sector Employment Discrimination Claims

Because Plaintiff was a federal employee, Title VII's federal-sector provision applies to her discrimination claims. *See Babb v. Sec'y, Dep't of Veterans Affs.*, 992 F.3d 1193, 1198 (11th Cir. 2021). Plaintiff's claims of race discrimination arise under 42 U.S.C. § 2000e-16(a), which provides that "[a]ll personnel actions affecting employees or applicants for employment . . . in military departments . . . shall be made free from any discrimination based on race." The court analyzes Plaintiff's age discrimination claim pursuant to the Age Discrimination in Employment Act (ADEA),[2] which

---

[1] It is not clear to the court whether Plaintiff's failure to promote claim is timely. Plaintiff appears to argue that she was entitled to a promotion to the GS-12 level upon completion of the internship program in 2011, though she only claimed that Defendant's failure to promote her became discriminatory after the April 2019 evaluation. (*See* Dkt. 29-6 at 1.) It is difficult to parse Plaintiff's response to Defendant's motion in this regard as her single-page declaration—upon which the majority of Plaintiff's statement of facts is drawn—does not reference many dates. (*See id.*; Dkt. 29 at 2–3.) Presuming that this timeline is accurate, Plaintiff's failure to promote claim, predicated on events that occurred nearly eight years before Plaintiff initiated contact with the EEOC, is untimely absent application of, for example, the continuing violation doctrine. *See Stuart v. Jefferson Cnty. Dep't of Hum. Res.*, 152 F. App'x 798, 800–01 (11th Cir. 2005). Even if Plaintiff raised this argument—which she does not—the court is unconvinced of its application here. *See id.* ("An employer's failure to promote is a discrete act or single occurrence and therefore the continuing violation doctrine does not apply."); *see also City of Hialeah v. Rojas*, 311 F.3d 1096, 1102 (11th Cir. 2002) ("If the victim of an employer's unlawful employment practice does not file a timely complaint, the unlawful practice ceases to have legal significance, and the employer is entitled to treat the unlawful practice as if it were lawful."). In any event, because neither party addresses this issue, and because the court finds that Plaintiff has not adduced sufficient evidence of race or age discrimination, the court does not make a determination on this point. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982) ("[F]iling a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling.").

[2] As Defendant points out, (Dkt. 28 at 2 n.1), Plaintiff incorrectly asserts age discrimination under Title VII instead of the ADEA, (Dkt. 1 at 5–6). "[A]ge discrimination claims are not cognizable under Title VII." *McDill v. Bd. of Pardons & Paroles*, 2:18-cv-597-ECM, 2019 WL 191651, at *2 (M.D. Ala. Jan. 14, 2019) (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 347 (2013)). Plaintiff's failure to state a claim for age discrimination under the correct statute furnishes an additional basis to dismiss

similarly provides that "[a]ll personnel actions affecting employees or applications for employment who are at least [forty] years of age . . . in military departments . . . shall be made free from any discrimination based on age." 29 U.S.C. § 633a(a).  "Since the relevant provisions of Title VII and the ADEA are materially identical," these provisions are "construed . . . the same way."  *Rosado v. Sec'y, Dep't of the Navy*, 127 F.4th 858, 865 (11th Cir. 2025) (quotation omitted).  "Both provisions demand that personnel actions be untainted by *any* consideration of the protected basis— race . . . under Title VII, and age under the ADEA."  *Id.* (alteration adopted and quotation omitted).

Accordingly, Plaintiff need not show that her race or age were but-for causes of the adverse actions she complains of; instead, she need only show that those protected categories contributed to the adverse actions.  *See Buckley v. Sec'y of the Army*, 97 F.4th 784, 793 (11th Cir. 2024) ("[A] federal employer violates the law if it allows [unlawful] discrimination to contribute to any personnel action—even if the federal employer would have made precisely the same decision had it not engaged in race discrimination.").[3]  This is a lighter burden than that borne by private-sector plaintiffs

---

Count III.  *See id.*  However, the court analyzes the age discrimination claim under the ADEA to provide a full explanation for dismissal.

[3] While Plaintiff identifies the correct standard governing federal-sector discrimination claims, (*see* Dkt. 29 at 4), she also argues that her claims alternatively survive under a "motivating factor analysis," (*see id.* at 13–14).  However, as stated, her federal-sector claims are governed by a simpler standard— she need only show that unlawful discrimination was a factor in the actions she complains of.  *See Babb v. Wilkie*, 589 U.S. 399, 402 (2020) ("The plain meaning of the critical statutory language ('made free from any discrimination based on age') demands that personnel actions be untainted by any consideration of age." (quoting 29 U.S.C. § 633a(a))); *Buckley v. Sec'y of the Army*, 97 F.4th 784, 793 (11th Cir. 2024) (applying *Babb*'s reasoning to a federal-sector race discrimination claim under 42

under the *McDonnell Douglas*[4] framework, but Plaintiff may still choose to rely upon that framework.  *See Rosado*, 127 F.4th at 866 ("[I]f a federal employee wishes to use the *McDonnell Douglas* framework to state a claim, [s]he may continue to do so.  It's just that *McDonnell Douglas* imposes a heavier burden than a federal employee must satisfy.").

Nonetheless, a federal-sector plaintiff bears the "burden of proving either 'discriminatory considerations' or their 'taint.'"  *Terrell v. Sec'y, Dep't of Veterans Affs.*, 98 F.4th 1343, 1354 (11th Cir. 2024); *see Lewis v. Sec'y of U.S. Air Force*, No. 20-12463, 2022 WL 2377164, at *10 (11th Cir. June 30, 2022) ("[A] federal[-]sector employee alleging Title VII and ADEA claims must still establish a *prima facie* case that a decision was not 'made free from any discrimination' . . . .").  She may do so, for example, by "provid[ing] evidence of a comparator employee—one similarly situated in all material respects—who was treated differently." *Id.* at *11.  Or, more broadly, she can point to "circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." *Id.* at *9 (quoting *Lewis v. City of Union City*, 934 F.3d 1169, 1185 (11th Cir. 2019)).  Such evidence "includ[es] discriminatory comments, suspicious timing, arbitrariness in the employer's actions, pretext in the employer's rationale, better treatment of similarly situated . . . employees outside the protected group, and similar experiences by . . . employees [within the protected

---

U.S.C. § 2000e-16(a)).  Accordingly, Plaintiff's motivating factor analysis is surplusage, beyond the applicable standard.
[4] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

group]." *Bell v. Sec'y, Dep't of Veterans Affs.*, No. 22-12698, 2024 WL 1462405, at *4 (11th Cir. Apr. 4, 2024).   In sum, a federal-sector plaintiff must still point to circumstantial evidence demonstrating discrimination, but she bears a lighter burden on this point than a non-federal-sector plaintiff under *McDonnell Douglas*.

Moreover, this lighter standard does not alter a federal-sector plaintiff's requirement to demonstrate an adverse employment action.   *See Buckley*, 97 F.4th at 794 ("[A] federal-sector employee must show . . . that a protected characteristic played any part in her employer's process in reaching an adverse employment decision." (emphasis omitted)).   A plaintiff raising a discrimination claim "must show some harm respecting an identifiable term or condition of employment."   *Muldrow v. City of St. Louis*, 601 U.S. 346, 354–55 (2024).[5]   That is, she must point to an action that "brought about some disadvantageous change in an employment term or condition."   *Id.* at 354 (quotation omitted).   She need not "show . . . that the harm incurred was significant" or "that the disadvantage . . . exceed[ed] a heightened bar."   *Id.* at 355 (quotation omitted).

Finally, while but-for cause is not required to establish liability, "the but-for causation of a given personnel action remains important in determining the appropriate remedy."   *Babb*, 992 F.3d at 1205 n.8 (quotation omitted).   This is because

---

[5] Though *Muldrow* involved a Title VII discrimination claim, its reasoning, rooted in the language of Title VII, would appear to apply equally to an age discrimination claim under the ADEA.   *See Rosado v. Sec'y, Dep't of the Navy*, 127 F.4th 858, 865 (11th Cir. 2025) ("Since the relevant provisions of Title VII and the ADEA are materially identical, [the Eleventh Circuit] ha[s] construed them the same way." (quotation omitted)); *see also Yates v. Spring Indep. Sch. Dist.*, 115 F.4th 414, 420 n.4 (5th Cir. 2024) ("*Muldrow* appl[ies] with equal force to [the plaintiff]'s ADEA discrimination claim.").

"[r]elief must redress the injury the [unlawful] discrimination inflicted," which flows from the principle that "the law seeks to make a plaintiff whole," not to "place the plaintiff in a better position than she would have been in had the employer not discriminated against her." *Buckley*, 97 F.4th at 794; *see Babb v. Wilkie*, 589 U.S. 399, 413 (2020) ("It is bedrock law that requested relief must redress the alleged injury. . . . To obtain [reinstatement, backpay, compensatory damages, or other forms of relief related to the end result of an employment decision], [a plaintiff] must show that [unlawful] discrimination was a but-for cause of the employment outcome." (quotation omitted)). Accordingly, where a federal-sector plaintiff shows that discrimination was a but-for cause of the adverse action she complains of, the court may award her "retrospective relief, like compensatory damages and back pay." *Terrell*, 98 F.4th at 1352. If she can only show that the action was "tainted" by discrimination, however, "she is not entitled to damages," though the court may "consider[] injunctive or other forward-looking relief." *Id.* (quotation omitted).

With the relevant frameworks established, the court turns to Plaintiff's claims.

**C. Adverse Employment Action**

In her complaint, Plaintiff asserts two related adverse employment actions as bases for each of her claims. (*See* Dkt. 1 at 3–6.) First, she received an unfavorable performance review. (*See id.*) Second, Defendant failed to promote her. (*See id.*) A negative performance evaluation, however, generally does not constitute an adverse employment action. *See Davis v. Town of Lake Park*, 245 F.3d 1232, 1242 (11th Cir. 2001) ("Employer criticism, like employer praise, is an ordinary and appropriate

feature of the workplace. . . . Simply put, the loss of prestige or self-esteem felt by an employee who receives what [s]he believes to be unwarranted job criticism or performance review will rarely—without more—establish the adverse action necessary to pursue a claim under Title VII's anti-discrimination clause."), *overruled on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). This conclusion is not altered by Plaintiff's allegation that this performance evaluation resulted in her not receiving the promotion she claims she was entitled to. *See id.* at 1243 ("A negative evaluation that otherwise would not be actionable will rarely, if ever, become actionable merely because the employee comes forward with evidence that his future prospects have been or will be hindered as a result."). In any event, Plaintiff appears to have dropped the argument that her performance evaluation constituted an adverse employment action, as she contends in her response only that Defendant's failure to promote her constituted an adverse action. (*See* Dkt. 29 at 11, 14.)

Defendant's purported failure to promote Plaintiff easily satisfies the adverse action requirement, as it caused "some harm" to "an identifiable term or condition" of her employment. *Muldrow*, 601 U.S. at 355; *see Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998) (determining that a "fail[ure] to promote" "constitutes a significant change in employment status"). Because Defendant offers no argument to the contrary in its motion, (*see* Dkt. 28 at 15–16), the court analyzes Plaintiff's race and age discrimination claims with Defendant's alleged failure to promote her as the relevant adverse action.

### D.  Race and Age Discrimination Claims

Both parties offer arguments under *McDonnell Douglas*.  (*See* Dkt. 28 at 13–19; Dkt. 29 at 11–13.)  Plaintiff is unable to make out a prima facie case of race or age discrimination under *McDonnell Douglas*, however, because she cannot identify a comparator with whom she was "similarly situated in all material respects."  *See Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1229 (11th Cir. 2019) (en banc).  Plaintiff's reference to "younger interns and . . . non-Black [i]nterns involved in the . . . [i]ntern program [who] were not required to sit for a subjective interview," (Dkt. 29-6 at 1; *see* Dkt. 29 at 12), is not sufficient to identify a comparator under *McDonnell Douglas*.  *See Piquion v. Walgreen, Co.*, 369 F. Supp. 2d 1339, 1346 (S.D. Fla. 2005) (concluding that the plaintiff had not satisfied the comparator requirement where he "offer[ed] nothing more than conclusory statements that no other employee was treated the same way"); *LeBlanc v. TJX Cos.*, 214 F. Supp. 2d 1319, 1326 (S.D. Fla. 2002) (concluding that the plaintiff had not satisfied the comparator requirement where he "fail[ed] to indicate specific instances or individuals to support his assertions" and instead "rel[ied] solely on his conclusory allegations").  Because Plaintiff has failed to proffer a comparator with whom she was similarly situated in all material respects, she has failed to make out her prima facie case under *McDonnell Douglas*.  *See Earle v. Birmingham Bd. of Educ.*, 843 F. App'x 164, 166 (11th Cir. 2021) ("A plaintiff's failure to produce evidence showing that a single similarly situated employee was treated more favorably will preclude the establishment of a prima facie case.").

That said, Plaintiff's failure to establish a prima facie case under *McDonnell Douglas* is not fatal to her discrimination claims because to hold Defendant liable she need only show that consideration of her race or age tainted the decision not to promote her. *See Buckley*, 97 F.4th at 794. Plaintiff has not made such a showing, however. In her response to Defendant's motion, Plaintiff contends that "taken as a whole, the[] facts demonstrate . . . a genuine issue of discrimination." (Dkt. 29 at 13.) Because Plaintiff does not cite any facts to support this assertion, it is not clear which facts Plaintiff argues demonstrate unlawful discrimination. (*See id.*) When the court looks to Plaintiff's statement of facts overall, Plaintiff appears to assert that discriminatory intent can be inferred from Defendant's disparate treatment of her "younger and . . . White colleagues" and that Defendant's assessments of Plaintiff's performance were a pretext for discrimination. (*See id.* at 2.) Neither of these arguments is availing.

Plaintiff maintains that "her younger and her non-Black peers, who were also participants in the internship program, were not required to sit for an unauthorized oral examination of [their] knowledge base." (Dkt. 29 at 12; *see* Dkt. 29-6 at 1.) While a court may infer a discriminatory intent from "evidence that similarly situated employees were treated differently, even where those employees were not strict comparators at the prima facie stage of a *McDonnell Douglas* analysis," the plaintiff must still offer some factual comparison between herself and those others who she claims were treated differently. *Robert v. City of Boca Raton*, No. 21-13779, 2024 WL 3066604, at *5 (11th Cir. June 20, 2024); *contrast id.* ("[W]e conclude [that the

plaintiff's proffered comparators] were simply too dissimilar.   Their one-off performance issues reasonably distinguish them from [the plaintiff]'s repeated paperwork errors."), *with Jenkins v. Nell*, 26 F.4th 1243, 1250–51 (11th Cir. 2022) (considering evidence that a specific, named individual—though "not a strict comparator" "because the circumstances surrounding [the] misconduct" were too dissimilar—"threatened his supervisor . . . [but] did not incur any additional warnings or discussion about his comments").  Plaintiff does not "identify affirmative evidence," *Crawford-El*, 523 U.S. at 600, that these other interns also, for example, suffered from performance deficiencies but were nevertheless promoted to GS-12.  (*See, e.g.*, Dkt. 29-6 at 1.)   Accordingly, the fact that only Plaintiff was subjected to additional assessments of her performance does not, standing alone, permit an inference of intentional discrimination. *See Jones v. Spherion Atl. Enter., LLC*, 493 F. App'x 6, 9 (11th Cir. 2012) (determining that the plaintiff's statements that her supervisor not only "singled out black women" but also "rudely reprimanded [black women] for violations[] while ignoring the same violations of white women even after the white women's violations were pointed out to him" "f[ell] short of creating a genuine issue of material fact" because they were "conclusory . . . and contain[ed] no specific details"); *see also Jolibois v. Fla. Int'l Univ. Bd. of Trs.*, 654 F. App'x 461, 464 (11th Cir. 2016) ("[C]onclusory allegations of discrimination, without more, are insufficient to show pretext.") (citing *Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996)).

Plaintiff appears to argue that Defendant was required to promote her once she completed the internship program and violated its own policies by not doing so.  (*See* Dkt. 29-6 at 1.)  However, the SF-50 that was executed when Plaintiff began her internship expressly stated that promotion was predicated "[u]pon satisfactory completion of the internship."  (Dkt. 28-2 at 2.)  The evidence adduced by Defendant indicates that Plaintiff's performance throughout the internship program was deficient.  (*See, e.g.*, Dkt. 28-3 at 38–39.)  Defendant asserts that it nevertheless hired Plaintiff into a full-time position at the GS-11 rate until Plaintiff could deliver fully acceptable performance.  (Dkt. 28 at 7; *see* Dkt. 28-1 at 18.)  As Defendant has shown, however, Plaintiff's performance did not improve, and several years' worth of Plaintiff's performance evaluations continued to note the same deficiencies identified by Campos during Plaintiff's tenure as an intern.  (*See* Dkt. 28-3 at 51–64.)  Even if Plaintiff had shown that Defendant violated an internal policy in permitting her to graduate at a reduced payrate, "[a] breach of an internal policy alone does not amount to a showing of pretext."  *Jolibois*, 654 F. App'x at 464; *see Springer v. Convergys Customer Mgmt. Grp., Inc.*, 509 F.3d 1344, 1350 (11th Cir. 2007) (discerning no evidence of pretext where the defendant hired an individual "without the internal posting of the position required by [the defendant's] corporate policy" because "violat[ion] [of] corporate personnel policies . . . does not necessarily indicate racial discrimination."); *Randle v. City of Aurora*, 69 F.3d 441, 454 (10th Cir. 1995) ("The mere fact that an employer failed to follow its own internal *procedures* does not necessarily suggest that the employer was

motivated by illegal discriminatory intent or that the substantive reasons given by the employer for its employment decision were pretextual.").

Indeed, when asked at her deposition why she felt she was being discriminated against, Plaintiff could point to only her own subjective belief.

> Q:  Did [Campos] say anything negative about your race?
>
> A:  Not necessarily.  It's just the way . . . I was treated, is how I felt.
>
> Q:  So the discrimination claims that you[ a]re making are based upon your feeling of how [Campos] treated you?
>
> A:  Yes.  And I saw the difference.
>
> Q:  Now, is there anything outside of a feeling that you can attribute to the discrimination?
>
> A:  No.

(Dkt. 28-3 at 12.)  Similarly, when asked what basis she had for asserting that she was treated differently from all of her fellow interns, Plaintiff could, again, point to only her subjective feeling.

> Q:  [D]o you contend that all of those people were treated better than you?
>
> A:  I felt.  Yes.
>
> Q:  So everyone was treated fairly except for you?
>
> A:  That's how I felt.
>
> Q:  And that's based on your feelings, correct?
>
> . . .
>
> A:  Yes.

(*Id.* at 14–15.)  Not only is a plaintiff's subjective belief insufficient to create a genuine dispute of fact, *see United States v. Stein*, 769 F. App'x 828, 832 (11th Cir. 2019) (finding the plaintiff's statements insufficient to "create an issue of fact" because they "conveyed her subjective belief, not personal knowledge," and because "[b]elief, no matter how sincere, is not equivalent to knowledge" (quotation omitted)), but in fact courts in this circuit have found statements such as Plaintiff's to affirmatively undercut allegations of discrimination, *see Huchzermeyer v. AT&T Commc'ns*, 746 F. Supp. 99, 103–04 (N.D. Ga. 1990) (reasoning that because "the plaintiff openly admit[ted] in his deposition that his suit [wa]s based completely on conjecture," "it [wa]s obvious that the plaintiff c[ould ]not establish that age played a substantial role in the defendant's failure to rehire him"); *Maholanyi v. SafeTouch of Tampa, Inc.*, No. 3:14-cv-1161-J-32JRK, 2016 WL 3595743, at *6 (M.D. Fla. July 5, 2016) (determining that the plaintiff's deposition testimony that "he did not know why he was terminated[] but age discrimination was 'an assumption' and 'the best he could come up with on why this happened'" cut against his discrimination claim (alteration adopted)).

In sum, a reasonable juror could not infer from the record evidence that Defendant's decision not to promote Plaintiff to GS-12 was tainted by consideration of her race or age.  Thus, Defendant is entitled to summary judgment in its favor.

## CONCLUSION

Federal courts "are not in the business of adjudging whether employment decisions are prudent or fair," but rather, "whether unlawful discriminatory animus

motivates a challenged employment decision." *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999). Because there is not sufficient "evidence on which the jury could reasonably find for" Plaintiff, Defendant is entitled to summary judgment. *Weaver*, 169 F.3d at 1321.

Accordingly:

1. Defendant's motion (Dkt. 28) is **GRANTED**.

2. The Clerk is **DIRECTED** to enter judgment in favor of Defendant, to terminate any pending motions and deadlines, and to close this case.

**ORDERED** in Orlando, Florida, on June 13, 2025.

JULIE S. SNEED
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record